1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    THERESA BROOKE,                          Case No.   1:25-cv-01196-CDB

12               Plaintiff,                     FINDINGS AND RECOMMENDATIONS TO
                                                DECLINE SUPPLEMENTAL JURISDICTION
13          v.                                  OVER PLAINTIFF'S STATE LAW CLAIMS

14    FIVE DIAMONDS LODGING INC,                (Docs. 1, 5)

15               Defendant.                     **14-DAY DEADLINE**

16                                              Clerk of the Court to Assign District Judge

17

18    **Background**

19          On September 14, 2025, Plaintiff Theresa Brooke ("Plaintiff") initiated this action with the

20    filing of a complaint against Defendant Five Diamonds Lodging Inc. ("Defendant"), alleging

21    violations of the American with Disabilities Act (ADA) and California's Unruh Civil Rights Act.

22    (Doc. 1). These claims stem from alleged barriers Plaintiff encountered while visiting a facility

23    owned, operated, or leased by Defendant. *Id.* at 2-3.  Defendant has not appeared.

24          On September 16, 2025, the undersigned ordered Plaintiff to show cause why the Court

25    should not decline to exercise supplemental jurisdiction over her Unruh Act claim in light of the

26    Ninth Circuit's decision in *Vo v. Choi*.  (Doc. 4); *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022)

27    (affirming a district court's decision to decline supplemental jurisdiction over an Unruh Act claim);

28    *see* 28 U.S.C. § 1367(c).  Plaintiff timely filed a response to the Court's show cause order on

                                              1

1    September 20, 2025.  (Doc. 5).  For the reasons given below, the undersigned will recommend that

2    the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and dismiss

3    these claims without prejudice to Plaintiff's refiling in state court.

4    **<u>Governing Legal Standards</u>**

5         Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall

6    have supplemental jurisdiction over all other claims that are so related to claims in the action within

7    such original jurisdiction that they form part of the same case or controversy under Article III of

8    the United States Constitution."  The Ninth Circuit has concluded that ADA and Unruh Act claims

9    that derive from a common nucleus of operative fact "form part of the 'same case or controversy'

10   for purposes of § 1367(a)."  *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

11        However, even where supplemental jurisdiction over a claim exists under § 1367(a), the

12   Court may decline jurisdiction over the claim if:

13        (1) the claim raises a novel or complex issue of State law,

14        (2) the claim substantially predominates over the claim or claims over which the

15        district court has original jurisdiction,

16        (3) the district court has dismissed all claims over which it has original jurisdiction,

17        or

18        (4) in exceptional circumstances, there are other compelling reasons for declining

19        jurisdiction.

20   § 1367(c)(1)-(4).

21        Pertinent here, a court deciding whether to apply § 1367(c)(4) must undertake "a two-part

22   inquiry."  *Arroyo*, 19 F.4th at 1210.  "First, the district court must articulate why the circumstances

23   of the case are exceptional within the meaning of § 1367(c)(4)."  *Id.* (citations and internal quotation

24   marks omitted).   "Second, in determining whether there are compelling reasons for declining

25   jurisdiction in a given case, the court should consider what best serves the principles of economy,

26   convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in

27   [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)]."  *Id.* (citations and internal quotation

28   omitted).

2

1    After considering § 1367(c)(4) and California's requirements for bringing Unruh Act

2  claims, "numerous district courts in California 'have declined to exercise supplemental jurisdiction

3  over Unruh Act . . . claims brought alongside ADA claims.'"   *Block v. Cal.-Fresno Invest. Co.*,

4  No. 1:22-cv-1419 JLT SAB, 2023 WL 8675398, at 4 (E.D. Cal. Dec. 15, 2023) (quoting *Rutherford*

5  *v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL 4572008, at 1 (C.D. Cal. Apr.

6  1, 2021)).   Underlying these decisions is "the recent confluence of several California-law rules

7  [that] have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases

8  that clearly threatens to have a significant adverse impact on federal-state comity."  *Arroyo*, 19

9  F.4th at 1211.

10    Notably, Congress adopted the ADA to address the discrimination encountered by persons

11  with disabilities, providing a private cause of action to seek injunctive, but not monetary, relief.

12  *See id.* at 1205 (discussing background and relief available under the ADA).   And the Unruh Act

13  likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f), stating

14  that a violation of the ADA also violates the Unruh Act.  However, unlike the ADA, the Unruh Act

15  allows a plaintiff to recover "up to a maximum of three times the amount of actual damage but in

16  no case less than four thousand dollars."  Cal. Civ. Code § 52(a).

17    In response to perceived abuses of the Unruh Act, California has enacted requirements for

18  bringing such claims, which requirements the Ninth Circuit has assumed, without deciding, "apply

19  only in California state court."  *Vo*, 49 F.4th at 1170.  For example, provisions were added (1)

20  regarding the contents of demand letters, Cal. Civ. Code § 55.31; (2) imposing heightened pleading

21  requirements, Cal. Civ. Code § 425.50(a); and (3) requiring an additional filing fee of $1,000 for

22  so called "high-frequency litigants," Cal. Gov't Code § 70616.5(b), *see* Cal. Civ. Code § 425.55(b)

23  (defining a high-frequency litigant to include "[a] plaintiff who has filed 10 or more complaints

24  alleging a construction-related accessibility violation within the 12-month period immediately

25  preceding the filing of the current complaint alleging a construction-related accessibility

26  violation").

27    All of these requirements[1] apply to claims alleging a construction-related accessibility

28  _____

[1] Cal. Civ. Code § 55.31(a); Cal. Civ. Code § 425.50(a); Cal. Gov't Code § 70616.5(a).

1    violation, defined as involving "a provision, standard, or regulation under state or federal law

2    requiring compliance with standards for making new construction and existing facilities accessible

3    to persons with disabilities," including those related to the ADA.  Cal. Civ. Code § 55.52(a)(1), (6);

4    *see* Cal. Civ. Code § 55.3(a)(2).  By enacting such restrictions, California has expressed a "desire

5    to limit the financial burdens California's businesses may face from claims for statutory damages

6    under the Unruh Act."  *Arroyo*, 19 F.4th at 1209 (internal quotations omitted).  However, "Unruh

7    Act plaintiffs have evaded these limits by filing in a federal forum in which [they] can claim these

8    state law damages in a manner inconsistent with the state law's requirements."  *Id.* at 1213 (internal

9    quotation omitted).  Consequently, "the procedural strictures that California put in place have been

10    rendered largely toothless, because they can now be readily evaded."  *Id.*

11    Recently, the Ninth Circuit provided substantial guidance on this issue in *Vo v. Choi* in

12    affirming a district court's order denying supplemental jurisdiction over an Unruh Act claim under

13    § 1367(c)(4).  *Vo*, 49 F.4th at 1168.  In that case, the district court declined supplemental jurisdiction

14    over the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing

15    the merits of the case.  *Id.* at 1168-69.  In reviewing the district court's decision, the Ninth Circuit

16    held that the district court sufficiently explained why the circumstances of the case were exceptional

17    under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and

18    'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's

19    procedural requirements by bringing their claims in federal court."  *Id.* at 1171.  The Court also

20    affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience,

21    fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating

22    that "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined

23    that the values of fairness and comity favored not retaining jurisdiction over the claim."  *Id.* at 1172.

24    Accordingly, "[g]iven these very real concerns, in addition to the deferential standard of review,

25    [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in determining

26    there were compelling reasons to decline jurisdiction over the Unruh Act claim."  *Id.*

27    With these legal standards in mind, the Court addresses whether the relevant considerations

28    of § 1367(c)(4) warrant declining the exercise of supplemental jurisdiction over Plaintiff's Unruh

1    Act claim.

2    **Discussion**

3    The Court begins with the first part of the two-step inquiry under § 1367(c)(4)—whether

4    the circumstances here are exceptional.  *Vo*, 49 F.4th at 1171.[2]

5    As discussed above, California has enacted various requirements that apply to claims

6    alleging a construction-related accessibility violation. And if the Court were to exercise jurisdiction

7    over Plaintiff's Unruh Act claim, Plaintiff would be permitted to avoid these requirements. *See*

8    *Arroyo*, 19 F.4th at 1213 (noting that potential evasion of California's requirements met

9    exceptional-circumstances prong of § 1367(c)(4)).  Further, such evasion would undermine

10    California's policy interests in enforcing its requirements—providing monetary relief but limiting

11    burdens on small businesses and disincentivizing plaintiffs' attorneys from obtaining "monetary

12    settlements at the expense of forward-looking relief that might benefit the general public." *Id.*  In

13    her response to the Court's show cause order, Plaintiff and her counsel offer scant argument for

14    why such circumstances should not be deemed exceptional, and there is "little doubt that the first

15    prong [under § 1367(c)(4)] is satisfied here."  *Vo*, 49 F.4th at 1171.

16    Turning to the second part of the inquiry—whether there are other compelling reasons for

17    declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness,

18    and comity.  *Vo*, 49 F.4th at 1171.  Importantly, this case is an early stage of the litigation—no

19    Defendant has appeared, and Plaintiff's claims have not been addressed.  *See Arroyo*, 19 F.4th at

20    1214 (noting that the *Gibb*'s values did not support declining supplemental jurisdiction where the

21    case was at a "very late stage").  Thus, this is not a case "where it makes no sense to decline

22    jurisdiction . . . over a pendent state law claim that that court has effectively already decided." *Id.*

23    _____

24    [2] The Court notes that Plaintiff's filing and supporting declarations in response to the
     Court's show cause order (Docs. 5, 5-1, 5-2) appear largely boilerplate (*i.e.*, substantially identical)
25    to filings Plaintiff and her counsel have made in response to similar orders to show cause in the
     Central District. *See*, *e.g.*, *Brooke v. Onni 888 Olive Street LP* (2:23-cv-09342-HDV-KS) (Doc.
26    11); *Brooke v. Gehna LLC* (2:24-cv-04889-SPG-MAR) (Doc. 12); *Brooke v. Rishabh Investment
     LLC* (5:23-cv-00813-JGB-kk) (Doc. 10); *Brooke v. Century Sierra LLC* (5:23-cv-00810-JGB-kk)
27    (Doc. 10). The filings appear similarly boilerplate to filings made by Plaintiff and her counsel in
     response to orders to show cause in this Court. *See*, *e.g.*, *Brooke v. Patel, et al.* (1:25-cv-01149-
28    JLT-CDB) (Doc. 5); *Brooke v. Bharat, et al.* (1:25-cv-01145-JLT-CDB) (Doc. 5).

1    Notably, Plaintiff makes no argument that the stage of this case warrants exercising jurisdiction,

2    setting forth only the unremarkable proposition that "[a]lthough the case is early, it is not automatic

3    that Unruh should be declined[.]" (Doc. 5 at 4).

4          Moreover, in light of the above discussion of California's requirements for Unruh Act

5    claims, it would not be fair, nor would comity be served, by allowing Plaintiff's Unruh Act claim

6    to proceed without the state court being able to enforce its policy interests as reflected in its various

7    procedural requirements.    *Arroyo*, 19 F.4th at 1213 (noting "comity-based concerns that

8    California's policy objectives in this area were being wholly thwarted" by plaintiffs being able to

9    bring Unruh Act claims in federal court).

10         On this issue, Plaintiff and her counsel dispute in their accompanying declarations (Doc. 5-

11   1; Doc. 5-2) whether they would be considered high-frequency litigants and would otherwise have

12   to meet certain California requirements, such as paying the $1,000 filing fee in state court.[3]

13   Plaintiff asserts that she would not be classified as a high-frequency litigant because she herself has

14   never filed any complaints because it is her counsel who filed them on her behalf.    *See* (Doc. 5-1).

15   Plaintiff's counsel asserts that he would not be classified as a high-frequency litigant because, in

16   the preceding 12 months, he has only represented "one person who alleges construction

17   accessibility cases," namely the Plaintiff and, thus, he does not meet the "10-plaintiff threshold."

18   *See* (Doc. 5-2; citing Cal. Civ. Proc. Code § 425.55(b)(2)).

19         The Court notes it need only determine whether California's requirements are implicated,

20   not whether they are in fact met. As the Ninth Circuit noted in *Vo*, whether a Plaintiff "has satisfied

21   the heightened pleading requirements" imposed in California is a question for the state court

22   because "[f]orcing the district court to determine if [this is] in fact true would itself run afoul of the

23   *Gibbs* values—especially comity," and would deprive California of playing its "critical role in

---

24         [3] The Court need not determine whether Plaintiff is in fact a high-frequency litigant. *Vo*,
25   49 F.4th at 1174 (noting that court was not required to determine whether the plaintiff was in fact
     a high-frequency litigant).  In all events, from a review of filings in this district and the Central
26   District, it does not appear to be a close call whether Plaintiff and counsel are high-frequency
     litigants. *See Brooke v. Patel*, No. EDCV 23-1037 JGB (KKx), 2023 WL 4843073, at *4 (C.D.
27   Cal. June 29, 2023) ("While the Court need not delve into statutory interpretation, it observes that
     Brooke is nonetheless a serial plaintiff whose Counsel has filed ten or more construction-related
28   accessibility violation complaints on her behalf.").

1  effectuating the policies underlying [its] reforms." *Vo*, 49 F.4th at 1173-74 (internal citation

2  omitted).

3       Next, Plaintiff argues that requiring her to bring a second action in state court would be

4  duplicative and would increase the costs of the action, and "comity is only one of four [*Gibbs*]

5  factors," with the other three factors favoring retention. (Doc. 5 at 3-4). In her brief, Plaintiff does

6  not acknowledge nor cite to *Vo*. *See generally* (Doc. 5).

7       As an initial matter, this argument improperly assumes that Plaintiff will be successful in

8  this action. However, even accepting such an assumption, the fact that the litigation could prove

9  duplicative or increase costs does not, in light of the other considerations, warrant retaining

10 jurisdiction. As one court has concluded, "if plaintiff legitimately seeks to litigate this action in a

11 single forum, plaintiff may dismiss this action and refile it in a state court in accordance with the

12 requirements California has imposed on such actions." *Garibay v. Rodriguez*, No. CV 18-9187 PA

13 (AFMX), 2019 WL 5204294, at 6 (C.D. Cal. Aug. 27, 2019). Moreover, it is California's

14 prerogative to impose a heightened filing fee for high-frequency litigants in an effort to curb abuses

15 of the Unruh Act at the risk of the fee being ultimately paid by defendants. It would undermine

16 comity and fairness were Plaintiff permitted to proceed with her Unruh Act claim in light of

17 California's policy concerns. *See Vo*, 49 F.4th at 1172 ("the district court [properly] analyzed *Vo*'s

18 situation under the *Gibbs* values and determined that the values of fairness and comity favored not

19 retaining jurisdiction over the claim.").

20      Lastly, Plaintiff's arguments concerning federal preemption of the Unruh Act's procedures

21 are unavailing. (Doc. 5 at 4-6); *see Brooke v. Onni 888 Olive St. LP*, No. 2:23-CV-09342 HDV

22 (KSx), 2023 WL 9689134, at *3 (C.D. Cal. Nov. 29, 2023) ("By declining to exercise supplemental

23 jurisdiction, the Court is merely honoring the express terms of the ADA, which provides a federal

24 private right of action for injunctive relief and an award of attorneys' fees. That is what Congress

25 provided in the form of relief. To the extent Plaintiff seeks greater remedies allowed under

26 California law, that forum is open to her.").

27      Accordingly, in light of the two-step inquiry under § 1367(c)(4), the Court concludes that

28 the circumstances of this case are exceptional and there are other compelling reasons to decline

1  supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims. *See*, *e.g.*, *Orosco*

2  *v. Monrroy Enters. LLC*, No. 2:23-cv-07818-MEMF (KSx), 2023 WL 10407115, at *5 (C.D. Cal.

3  Nov. 30, 2023) (declining to exercise supplemental jurisdiction over and dismissing Plaintiff's

4  California Unruh Act, Disabled Persons Act, Health & Safety Code and negligence claims

5  following *Vo/Arroyo* analysis); *Kim v. Vegara*, No. EDCV 22-281 JGB (SHKx), 2022 WL

6  17080182, at *5 (C.D. Cal. Oct. 5, 2022) (same); *Benford v. Hall*, No. CV 22-03337-RSWL-ASx,

7  2022 WL 20273588, at *3 & n.3 (C.D. Cal. July 18, 2022) (same).

8  **Conclusion and Recommendation**

9  For the reasons given above, IT IS HEREBY ORDERED that the Clerk of the Court

10  randomly assign a District Judge to this action.

11  And IT IS RECOMMENDED as follows:

12  1.  The Court DECLINE to exercise supplemental jurisdiction over Plaintiff's claims arising

13  under state law pursuant to 28 U.S.C. § 1367(c)(4).

14  2.  Plaintiff's Unruh Act claims be dismissed without prejudice to Plaintiff's filing of these

15  claims in state court.

16  These findings and recommendations will be submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within 14 days after

18  being served with these findings and recommendations, Plaintiff may file written objections with

19  the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

20  Recommendations." Plaintiff is advised that failure to file objections within the specified time may

21  result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014)

22  (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

23  IT IS SO ORDERED.

24  Dated:   **September 22, 2025**                        _____

25                                                          UNITED STATES MAGISTRATE JUDGE

26

27

28

8